IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-0613-NYW

MICHELLE STOOLE

 Plaintiff

v.

METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY,

 Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Nina Y. Wang

  This matter comes before the court on Defendant Metropolitan Property and Casualty Insurance Company's ("Defendant" or MetLife") Motion for Summary Judgment (or "Motion"). [#32]. This civil action was referred to the undersigned Magistrate Judge to preside over fully for all purposes. *See* [#15]; Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. The court concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon careful review of the Motion and associated briefing, the applicable case law, and the entire docket, the court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

  Plaintiff Michelle Stoole ("Plaintiff" or "Ms. Stoole") initiated this matter in the Denver County District Court on or about February 14, 2017. *See* [#1 at ¶ 2; #3]. Plaintiff asserts three claims against MetLife for: (1) breach of an insurance contract ("breach of contract") ("Claim 1"); (2) common law bad faith breach of an insurance contract ("common law bad faith") ("Claim 2"); and (3) unreasonable delay and denial of insurance benefits pursuant to Colo. Rev.

Stat. §§ 10-3-1115, -1116 ("statutory bad faith") ("Claim 3"). *See generally* [#3]. MetLife removed this suit to this District, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* [#1].

The undersigned held a Scheduling Conference with the Parties and entered a Scheduling Order setting, among others, a deadline for filing dispositive motions of March 9, 2018. *See* [#16; #17]. Upon MetLife's request, the court extended the dispositive motions deadline to March 30, 2018, *see* [#27], the date on which Defendant filed the instant Motion. *See* [#32]. Plaintiff has since filed her Response [#33], including a stipulated-to Amended Response [#40],[1] and Defendant has filed its Reply [#41]. The Motion for Summary Judgment is now ripe.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory

---

[1] In addressing the Motion for Summary Judgment the court refers to Ms. Stoole's Amended Response [#40].

that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670–71. Relatedly, when a defendant moves for summary judgment to test an affirmative defense, it is the defendant's burden to demonstrate the absence of any disputed fact as to the affirmative defense asserted. *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011).

In either instance, once the movant meets its initial burden the burden shifts to the nonmovant to put forth sufficient evidence to demonstrate the essential elements of her claim(s), *see Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999), and to "demonstrate with specificity the existence of a disputed fact" as to the defendant's affirmative defense, *see Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). Conclusory statements based merely on speculation, conjecture, or subjective belief are not competent summary judgment evidence. *See Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). And the nonmoving party's evidence must be more than "mere reargument of his case or a denial of an opponent's allegation," or it

will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998). But the "court [will] view[] the record and draw[] all inferences in the light most favorable to the non-moving party." *Pepsi–Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## MATERIAL FACTS

The following facts are drawn from the record before the court and are undisputed unless otherwise noted.[2] On or about September 23, 2011, a non-party, Ms. Ha Vo, rear-ended Ms. Stoole's vehicle. *See* [#3 at ¶ 1; #40-12 at ¶¶ 2–5; #40-15 at 2]. At the time of the traffic collision Ms. Stoole was insured by MetLife Policy 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-0 (the "Policy"), which provided a $100,000 per person limit for underinsured motorist coverage ("UIM"). *See* [#32-15 at 2]. Plaintiff subsequently brought suit against Ms. Vo in Denver County District Court (the "Underlying Suit"), asserting claims for negligence and negligence *per se* for the traffic collision and resulting injuries to Ms. Stoole. *See* [#40-12].

---

[2] Defendant objects to portions of Plaintiff's proffered evidence as containing inadmissible hearsay. These objections concern only two exhibits proffered by Plaintiff—MetLife's claim adjuster's claim notes [#40-8] and the affidavit of Ms. Olivia Gonzalez [#40-10]. Plaintiff offers no argument that the statements are not offered for the truth of the matter asserted or an applicable exception to the hearsay rule for either exhibit, and the court therefore does not consider them. Additionally, it appears that Plaintiff did not disclose the affiant, Ms. Olivia Gonzalez, as a witness in this matter as required by Rule 26(a) or (e). Failure to disclose Ms. Gonzalez as a witness precludes Ms. Stoole from "us[ing] that . . . witness to supply evidence on a motion, . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff did not seek leave to file a sur-reply and therefore offers no explanation as to why her untimely disclosure is substantially justified. And, to the extent that a material witness is also a current employee of the Bendinelli Law Firm that continues to represent Plaintiff in this action, a potential conflict appears. Moreover, I conclude that this untimely disclosure is not harmless.

The Parties, however, do not lodge any objections to the use of the other proffered evidence that may contain hearsay. Accordingly, the court utilizes this evidence to highlight several disputes of fact. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (noting that courts are constrained to disregard hearsay on summary judgment *if* "there is a proper objection to its use and the proponent of the testimony can direct us to no applicable exception to the hearsay rule.").

In a letter dated November 5,[3] 2012, Plaintiff's counsel infromed MetLife that Ms. Stoole would assert a UIM claim in connection with the Underlying Suit if applicable. *See* [#40-11 at 3–4]. MetLife responded on or about November 19, 2012, requesting information regarding Ms. Stoole's medical treatment, bills, and records, as well as attaching a medical authorization for all of Ms. Stoole's medical records. *See* [#32-1]. Between November 30, 2012 and May 30, 2013, Ms. Stoole's counsel sent MetLife four letters seeking disbursement of Plaintiff's medical payments coverage to reimburse Plaintiff for her out-of-pocket medical expenses. *See* [#40-1; #40-2; #40-3; #40-4]. Each letter purportedly attached Ms. Stoole's medical bills incurred to date as a result of the traffic collison. *See* [#40-1; #40-2; #40-3; #40-4]; *see also* [#40-5 (Plaintiff's medical records)].

Plaintiff settled the Underlying Suit with Ms. Vo's insurer for $98,000. *See* [#3 at ¶¶ 28–29; #40-13]. The Denver County District Court then dismissed the Underlying Suit on or about August 14, 2015. *See* [#40-14]. About September 1, 2015, Ms. Stoole sent MetLife a UIM demand for the full $100,000 available under the Policy. *See* [#40-15]. Defendant acknolwedged receipt of the demand [#40-16], and then offered Ms. Stoole $3,500 to settle her UIM claim on or about October 2, 2015 [#40-17].

Communication between the Parties through their respective counsel soon became strained and sporadic. *See, e.g.*, [#32-2 at ¶¶ 14–20 (detailing MetLife's claim adjuster's attempts to correspond with Plaintiff's counsel)]. The Parties exchanged several correspondences expressing their divergent views on whether Ms. Stoole submitted all relevant medical records and documents related to the Underlying Suit, including an independent medical examination ("IME") report and Plaintiff's deposition transcripts, *see, e.g.*, [#32-5; #32-

---

[3] Defendant contends that it did not receive notice until November 12, 2012, [#32 at 12; #32-2 at ¶ 3], but this dispute is not material.

5

6; #40-6; #32-7; #40-19; #32-9; #40-20]; whether Ms. Stoole was undergoing additional treatment for her injuries, *compare* [#32-2 at ¶¶ 14–20; #40-8 at 1; #40-22 at 92:6–9,[4] 92:14–20] *with* [#32-10 at 73:4–11 (testifying that her treatment ceased in 2013)]; whether she had accepted MetLife's $3,500 offer; and whether she would sign MetLife's medical authorization, *see, e.g.*, [#40-18 at 2].

Around December 2016, Defendant tendered $3,500 to Plaintiff for the undisputed amount of her UIM claim. *See* [#32-2 at ¶ 21; #32-10 at 91:3–6]. Because Plaintiff believed she was entitled to the full $100,000 UIM limit, this litigation ensued. *See generally* [#3].

## ANALYSIS

### I. Claim 1 - Breach of Contract

In Colorado, to recover for an alleged breach of contract a plaintiff must prove : (1) the existence of a contract; (2) the plaintiff's performance of its contractual obligations or its justification(s) for non-performance; (3) the defendant's failure to perform; and (4) the plaintiff's damages. *See Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp. 2d 1238, 1243 (D. Colo. 2013) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). "The interpretation of an insurance contract is a question of law" to which traditional principles of contract interpretation apply. *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059 (Colo. 2005); *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990). Thus, "'[c]ourts should not rewrite insurance policy provision[s] that are clear and unambiguous.'" *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 902 (10th Cir. 2006) (quoting *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999)).

Relevant here, an insured may forfeit her ability to recover under the insurance contract

---

[4] When citing to a transcript the court cites to the document number generated by the CM/ECF system but the page and line number generated by the transcript.

"only when, in violation of a policy provision," she "fails to cooperate with the insurer in some material and substantial respect." *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001). "[T]his failure to cooperate [must] materially and substantially disadvantage[] the insurer." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015). An inconsequential lack of cooperation is immaterial, and an insured's failure to cooperate may be excused if due to a mistake or a showing that there was no exercise of bad faith. *See Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989). "[T]he question of whether the insured failed to cooperate with the insurer is a question of fact for the trial court." *See Summit Bank & Tr. v. Am. Modern Home Ins. Co.*, 71 F. Supp. 3d 1168, 1176 (D. Colo. 2014).

MetLife moves for summary judgment on Claim 1, arguing that Ms. Stoole breached the Policy's cooperation provision, thereby excusing Defendant's performance obligations. *See* [#32 at 11–16; #41 at 5–8]. In support, MetLife focuses on Ms. Stoole's failure to: (1) sign a medical authorization, (2) provide MetLife with all of her relevant medical records, (3) timely inform MetLife of a potential UIM claim, (4) respond to MetLife's $3,500 settlement offer, and (5) provide expert reports and deposition transcripts from the Underlying Suit. *See* [#32 at 11–16; #41 at 5–8]. Ms. Stoole counters by attacking the legality of MetLife's medical authorization, arguing that the law does not require her to waive her physician-patient privilege to receive UIM benefits, that the medical authorization is unconscionable, and that the medical release violates state law as well as federal law and regulations. *See* [#40 at 9–13]. Ms. Stoole also contends that MetLife cannot demonstrate it was prejudiced by her alleged non-cooperation, because MetLife possessed the necessary medical records and bills. *See* [*id.* at 13–15]. I consider these arguments in turn.

A.   The Policy

MetLife points to four provisions under the Policy's General Policy Conditions to support its argument that Ms. Stoole failed to cooperate. These include:

1. **IF AN ACCIDENT OR LOSS OCCURS:** "You or someone on your behalf must notify us as soon as possible of any accident or loss. . . ." [#32-15 at 25];

2. **YOUR DUTY TO COOPERATE:** "You must cooperate with us in every effort to investigate the accident or loss, settle any claims and defend you. . . ." [*Id.*];

3. **LAWSUITS AGAINST US:** You may not sue us unless there is full compliance with all of the terms of the policy. . . ." [*Id.*]; and

4. **MEDICAL REPORTS; PROOF AND PAYMENT OF CLAIM:** "Any person making a claim must, as soon as possible:

    a. give us details about the death, injury, treatment, and other information we need to determine the amount payable. . . .

    b. execute authorizations to permit us to obtain medical reports and records. . . . [*Id.* at 26].

As mentioned, courts are to enforce insurance contracts as written when the terms are clear and unambiguous. *See Lovell*, 466 F.3d at 902. "In construing a term, a court should ascertain what a person of ordinary intelligence would understand the term to mean . . . giving words their plain meaning according to common usage." *Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir. 2008) (internal citations and quotation marks omitted) (applying Colorado law). The four provisions above are clear and unambiguous; each dictates Ms. Stoole's performance obligations as the insured.

MetLife argues that Ms. Stoole's conduct establishes as a matter of law that she did not

perform her obligations under the Policy, namely, her duty to cooperate with MetLife in its evaluation of her UIM claim. According to MetLife, Ms. Stoole's conduct made it "impossible" to determine the value of her UIM claim, as she purposely withheld relevant information to MetLife's detriment. *See* [#32 at 12–13, 14–15; #41 at 6–8]. But "[o]nce the terms of the agreement have been identified, the *fact finder* must determine whether the party accused of breaching has performed its obligations under the contract. Whether a party has performed its obligations under a contract or breached is a *question of fact*." *Lake Durango Water Co. v. Pub. Utilities Comm'n of State of Colorado*, 67 P.3d 12, 21 (Colo. 2003) (emphasis added); *see also Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005) (explaining that the question of a material breach, thereby excusing the performance obligation of the non-breaching party, is a question of fact).

As discussed below, much of what MetLife argues concerns questions of fact regarding Ms. Stoole's performance under the Policy—questions that cannot be resolved by the court on summary judgment. Additionally, I conclude that MetLife has failed to carry its burden of proving its affirmative defense of non-cooperation because it does not establish that Ms. Stoole's conduct materially and substantially disadvantaged its evaluation of her UIM claim. Accordingly, the court **DENIES** MetLife's Motion for Summary Judgment as to Claim 1.

    **B.**    **Questions of Fact**

MetLife's following arguments concerning Ms. Stoole's performance under the Policy present questions of fact that are inappropriate for resolution on summary judgment.

*The Medical Records:* MetLife stresses that Plaintiff failed to provide all of her relevant medical records as required under the Policy. Based on the record before the court, it appears that Plaintiff did produce her medical records relating to her traffic collision with Ms. Vo and

9

UIM claim, and there are several disputed facts regarding these records.

To start, it is unclear *when* MetLife actually received all of the relevant medical records: Plaintiff contends she produced this information in 2012, 2013, 2015, and 2016, whereas Defendant suggests that it was not until September 1, 2015, as anything produced previously was related to Ms. Stoole's medical payments coverage, not her UIM claim. *Compare* [#40 at 2; #40-1; #40-2; #40-3; #40-4; #40-5; #40-15] *with* [#32 at 12–13; #41 at 2]. Notwithstanding Defendant's contentions, it appears from Plaintiff's September 1, 2015 UIM demand letter that she relied on those previously disclosed medical records to support her demand for the $100,000 UIM limit. *See* [#40-15]; *see also* [#40-5]. Further, the correspondences between the Parties reflect that MetLife designated Ms. Stoole's claim(s) under one claim number (Claim #SDL 47644) at all relevant times. *E.g.*, [#32-1; #32-3 through #32-9]. This suggests that MetLife may have been in possession of relevant medical records prior to September 1, 2015. Even assuming Ms. Stoole did not produce her relevant medical records until September 1, 2015, Ms. Stoole argues that she sent her medical records within approximately 2 months from settling the Underlying Suit once she knew the extent of her UIM claim. [#40 at 14]; *accord Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 643 (Colo. 2005) ("Most insurance policies require the insured to provide the insurer with prompt notice of a claim at or about the time that the claim arises or becomes known to the insured, or within a reasonable period of time thereafter."). Whether her conduct comports with the requirements of the Policy is a question of fact for the jury.

Additionally, a dispute of fact exists as to whether Plaintiff was receiving continued treatment beyond December 2013. Defendant maintains that Plaintiff's counsel represented that Ms. Stoole sought additional treatment for her injuries, including radiofrequency ablation; hence

10

its continued requests for updated medical records and bills. *See* [#3 at ¶ 35; #32-2 at ¶¶ 14, 16, 17–20; #32-5; #32-6; 32-7; #32-9; #40-22 at 92:6–20 (MetLife's claim adjuster testifying to not receiving subsequent treatment records despite additional treatment being rendered after her initial handling of the claim)]. But Plaintiff testified at deposition that she ceased treatment around 2013. *See* [#32-10 at 73:4–6]. And Plaintiff's attorney explained, "Her treatment was discontinued due to financial reasons", but noted that she was "a candidate for the radiofrequency ablation." [#40-6]. Plaintiff's attorney then purportedly sent additional medical records to MetLife, including for radiofrequency ablation, on July 27, 2016. [#40-19]. Given this ambiguity, it is for the jury to decide whether Ms. Stoole sufficiently cooperated with MetLife in its evaluation of her UIM claim to meet her contractual obligations.

***The Response to Settlement Offer:*** As to the $3,500 settlement offer, Defendant argues that Plaintiff failed to cooperate because she refused to respond to the offer. [#32 at 14]. Plaintiff counters that she in fact rejected that offer on October 13, 2015. *See* [#40 at 15]. A review of the record reveals that Plaintiff did reject the $3,500 settlement offer, *see* [#40-22 at 92:14–15 (MetLife's claim adjuster testifying that Plaintiff "rejected the offer")], but it is unclear *when* that rejection occurred. Moreover, the Policy is silent on whether Ms. Stoole's cooperation in settling her UIM claim requires her to promptly respond to settlement offers. Thus, whether her conduct constitutes non-cooperation is a question of fact for the jury to decide.

***The Expert Reports and Deposition Transcripts:*** MetLife also urges the court to find that Plaintiff failed to cooperate by unreasonably delaying production of the requested IME report and Plaintiff's deposition transcripts from the Underlying Suit. *See* [#32 at 13; #41 at 7]. Defendant contends that Plaintiff did not disclose this information, despite repeated requests, until "well into discovery in the current case", and that MetLife had to subpoena Plaintiff's

expert witness to obtain the IME report.

Aside from the general cooperation provision, the Policy provides, "If a person seeking coverage files a suit against the owner or driver of the **uninsured** or **underinsured motor vehicle,** copies of suit papers must be forwarded to [MetLife] . . . ." [#32-15 at 18 (emphasis in original)]. The Policy does not define "suit papers", but elsewhere the Policy states that "[i]f a claim or suit is made, immediately forward to [MetLife] every claim, demand, notice, summons, or other process[]", or if "any legal action is begun before [MetLife] makes payment under any coverage, a copy of the summons and complaint or other process must be forwarded to [MetLife] immediately." [*Id.* at 25]. MetLife does not highlight this language in support of its argument. Thus, the court presumes that "suit papers" contemplates the forwarding of the complaint, summons, or other process associated with the Underlying Suit, *cf. Leadvill Corp. v. U.S. Fid. & Guar. Co.*, 55 F.3d 537, 539–40 (10th Cir. 1995), not the IME report or Ms. Stoole's deposition transcripts, *see Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("Courts should read the provisions of the policy as a whole, rather than reading them in isolation.").

MetLife's argument, then, must be that Plaintiff's failure to provide this documentation, despite Defendant's repeated requests and ultimate subpoenaing of Plaintiff's expert to obtain the IME report, violates the Policy's general cooperation provision. But the court cannot "presume" that Plaintiff's withholding of the IME report was for nefarious purposes, as there is no evidence in the record to support this assertion and all reasonable inferences must be drawn in favor of Ms. Stoole, the nonmovant. Accordingly, whether Ms. Stoole failed to cooperate under these circumstances is also a question for the jury.

C.     **Material and Substantial Disadvantage**

MetLife also moves for summary judgment because Plaintiff refused to provide signed medical authorizations and failed to provide timely notice of her UIM claim. Although in both instances Ms. Stoole arguably violated the Policy, I find that MetLife fails to demonstrate that these breaches materially and substantially disadvantaged its evaluation of her UIM claim.

*The Medical Authorization:* It is undisputed that Ms. Stoole did not sign a medical authorization as required by the clear terms of the Policy. *See* [#32-15 at 26]. Defendant relies on *Harris v. Allstate Insurance Company* for the proposition that an insured's refusal to provide signed medical authorizations as required under the unambiguous language of the insurance contract establishes Ms. Stoole's lack of cooperation as a matter of law. No. 09-cv-01953-LTB-MJW, 2010 WL 2543560, at *4 (D. Colo. June 22, 2010). While the court found this to be true in *Harris*, it did not make any determination as to whether this materially and substantially disadvantaged Allstate.

Here, I find that MetLife has failed to carry its burden that there is no genuine dispute of material fact that Plaintiff's failure in this regard materially and substantially disadvantaged MetLife. Even without a signed medical authorization for *all* of Ms. Stoole's medical records, including those with no bearing on the traffic collision with Ms. Vo, the record reveals Plaintiff's production of medical records, *see, e.g.*, [#40-1 through #40-5; #40-15]; and it reflects her concerns about the scope of MetLife's medical authorization, *see* [#40-19 at 1–2]. Indeed, MetLife refuted Ms. Stoole's apparent reliance on *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005) for the proposition that Ms. Stoole was not required to waive her physician-patient privilege by merely placing her physical condition at issue in this matter. *Compare* [*id.*] *with* [#32-9 at 1–2 ("*Alcon* pertained to a third-party case in litigation whereas here, the duties of the parties are set

forth in the insurance contract.")].

Ultimately, MetLife has failed to establish that Ms. Stoole's refusal to sign the medical authorization resulted in material and substantial disadvantage to MetLife. While MetLife argues that the release would have saved time in obtaining Ms. Stoole's medical records, it fails to demonstrate which records it would have sought. And, as discussed, there are genuine disputes of material fact regarding the production of relevant medical records, including any continued treatment. Thus, MetLife has not demonstrated that Ms. Stoole's conduct was not due to a mistake (*i.e.*, her reliance on *Alcon*) or that she acted in bad faith to MetLife's material and substantial disadvantage. *See Hansen*, 779 P.2d at 1364.

***The Notice of UIM Claim:*** Defendant also argues that Ms. Stoole failed to cooperate under the Policy because she did not timely notify MetLife of her UIM claim until "one year and two months after the accident [with Ms. Vo]." [#32 at 12]. Again, I find that MetLife fails to demonstrate that Plaintiff's conduct prejudiced its evaluation of Ms. Stoole's UIM claim.

As noted, the Policy requires the insured to "notify [MetLife] as soon as possible of any accident or loss." [#32-15 at 25]. The Colorado Supreme Court has explained that similar language requiring notice "as soon as practicable" "means that notice must be given within a reasonable length of time under the circumstances", and failure to do so constitutes an insured's breach of contract. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 226 (Colo. 2001) (holding that the insureds' notice of a claim was unreasonably delayed when that notice was five months after the insureds reasonably could have known about the claim). But an insurer must prove by a preponderance of the evidence that the delayed notice prejudiced its interests. *See MarkWest Energy Partners, L.P. v. Zurich Am. Ins. Co.*, 411 P.3d 1080, 1082 (Colo. App. 2016); *but see Craft v. Philadelphia Indem. Ins. Co.*, 343 P.3d 951, 953 (Colo. 2015) (holding that the

14

"notice-prejudice rule does not apply to a date-certain notice requirement in a claims-made insurance policy.").

Here it is undisputed that Ms. Stoole did not notify MetLife of her potential UIM claim until approximately November 5, 2012 [#40-11], which was approximately 13 months after her traffic collision with Ms. Vo. The Parties, however, put forth no evidence as to when Ms. Stoole should have reasonably known about her UIM claim, *see Clementi*, 16 P.3d at 226; but even assuming that Ms. Stoole's 13-month delay was unreasonable, MetLife fails to prove by a preponderance of the evidence that this delay prejudiced its interests. Rather, Defendant focuses on Plaintiff's conduct *after* she provided notice of her UIM claim, but does not advance any theory of prejudice caused by the 13-month delay. *See id.* at 232 (finding that, despite the insured's unreasonable delay in providing notice, the insurer's failure to put forth evidence of what other investigations would have adequately protected its rights under the insurance policy precluded summary judgment on whether the delayed notice prejudiced the insurer).

## II. Claim 2 - Common Law Bad Faith

"It is well-settled that there is an implied covenant of good faith and fair dealing in every insurance contract." *Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012). "Due to the 'special nature of the insurance contract and the relationship which exists between the insurer and the insured,' an insurer's breach of the duty of good faith and fair dealing gives rise to a separate cause of action arising in tort." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 414 (Colo. 2004) (quoting *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003)). "For a common-law claim involving the breach of an underinsured-motorist policy, the insured must prove that the insurer (1) acted 'unreasonably under the circumstances' and (2) 'knowingly or recklessly disregarded the validity of the

insured's claim.'" *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (quoting *Goodson*, 89 P.3d at 415); *see also Sunahara v. State Farm Mut. Auto. Ins. Co.*, 280 P.3d 649, 657 (Colo. 2012) (explaining that UIM claims are "first-party" claims because the insured "is suing his own insurance company").

MetLife moves for summary judgment on Claim 2, because Ms. Stoole fails to offer any evidence that MetLife acted unreasonably or that it knowingly and recklessly disregarded the validity of her UIM claim. *See* [#32 at 20–21; #41 at 9]. Plaintiff does not substantively address these arguments. Based on a review of the record, I find that Ms. Stoole has failed to offer sufficient evidence for a jury to conclude that MetLife knowingly and recklessly disregarded the validity of her UIM claim and, therefore, focus solely on this component of Claim 2.

Though drawing all reasonable inferences in Ms. Stoole's favor, nothing in the record establishes a genuine dispute of material fact as to any improper motive by Defendant in delaying and/or denying Ms. Stoole's UIM claim. While the record reflects a chronology of communications between the Parties establishing a dispute about Ms. Stoole's UIM claim, any inference of a knowing and reckless disregard by MetLife is speculation and conjecture, which is insufficient to survive summary judgment. *See MacKinney v. Allstate Fire & Cas. Ins. Co.*, No. 16-CV-01447-NYW, 2017 WL 3397361, at *4–5 (D. Colo. Aug. 8, 2017) (granting summary judgment in favor of the insurer on the plaintiff's common law bad faith claim given the absence of any admisisble evidence as to the insurer's knowing and reckless disregard of a valid claim). Accordingly, the court **GRANTS** Defendant's Motion for Summary Judgment as to Claim 2.

### III.    Claim 3 - Statutory Bad Faith

Colo. Rev. Stat. § 10-3-1115(1)(a) provides, "A person engaged in the business of insurance shall not unreasonably delay or deny payment" to an insured person. An insurer's

action is unreasonable if its delay or denial of payment was without a reasonable basis. *See Turner v. State Farm Mut. Auto. Ins. Co.*, No. 13-CV-01843-MSK-BNB, 2015 WL 1297844, at *3 (D. Colo. Mar. 19, 2015) (citing Colo. Rev. Stat. § 10-3-1115(2)). Thus, the only element at issue here is whether MetLife delayed and/or denied Plaintiff's UIM benefits without a reasonable basis. *See Baker v. Allied Prop. & Cas. Ins. Co.*, 939 F. Supp. 2d 1091, 1107 (D. Colo. 2013).

MetLife's sole argument for summary judgment as to Claim 3 rests on its assertions that a one-year, as opposed to two-year, statute of limitations applies to statutory bad faith claims. *See* [#32 at 16–20].[5] According to Defendant, Claim 3 accrued on October 2, 2015 or October 13, 2015 at the latest; thus, Ms. Stoole's initiation of this action on February 14, 2017 renders Claim 3 untimely. *See* [*id.*]. Ms. Stoole counters that a two-year statute of limitations applies, but even if a one-year statute of limitations applies, each bad act by MetLife starts the statute of limitations anew. *See* [#40 at 16–19]. Under either theory, Plaintiff argues that Claim 3 is timely.

Recently, the Colorado Supreme Court ruled that a two-year, rather than one-year, statute of limitations applies to a statutory bad faith claim. *See Rooftop Restoration, Inc. v. Am. Family Mut. Ins. Co.*, --- P.3d ----, 2018 WL 2407591, at *1 (Colo. May 29, 2018). In doing so, the Colorado Supreme Court held that the legislative intent was clear: an action brought pursuant to Colo. Rev. Stat. § 10-3-1116(1) "is not an 'action[] for any penalty or forfeiture of any penal

---

[5] Defendant suggests for the first time in its Reply that summary judgment is appropriate in its favor on Claim 3 because Ms. Stoole fails to offer any evidence MetLife acted unreasonably, and because insurers may challenge claims that are fairly debatable. *See* [#41 at 8]. Given that these arguments were first raised on reply, I do not consider them. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) ("The ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.").

statute[]' within the meaning of section 13-80-103(1)(d)." *Id.* According to the Colorado Supreme Court, "the one-year statute of limitations found in section 13-80-103(1)(d) does not apply to a cause of action brought pursuant to section 10-3-1116(1)." *Id.* at *4. Accordingly, Plaintiff's statutory bad faith claim, whether accruing on October 2 or 13, 2015, is timely. The court therefore **DENIES** Defendant's Motion for Summary Judgment as to Claim 3.

## CONCLUSION

Therefore, for the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [#32] is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings herein; and

(2) A Telephonic Status Conference is set for **July 3, 2018 at 11:00 a.m.** for the purposes of setting a Final Trial Preparation Conference and trial in this matter.

DATED: June 26, 2018                        BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge